IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| SAVISTA, LLC, | ) | CIVIL CASE NO.: 1:23-CV-06445 |
| | ) | Honorable Sara L. Ellis |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANT'S MOTION TO** |
| | ) | **DISMISS OR, IN THE** |
| GS LABS, LLC, | ) | **ALTERNATIVE, MOTION TO** |
| | ) | **TRANSFER VENUE** |
| Defendant. | ) | |
| | ) | |
| | ) | |

COMES NOW, Defendant GS Labs, LLC, by and through its undersigned counsel, and hereby moves the Court for an Order dismissing Defendant for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Defendant further objects that venue is improper in the United States District Court for the Northern District of Illinois pursuant to Fed. R. Civ. P. 12(b)(3). As an alternative to dismissal, Defendant respectfully requests that this action be transferred to the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a). In accordance with Judge Ellis's rules pertaining to motion practice, Defendant shows the Court that undersigned counsel conferred with counsel for Plaintiff via email correspondence dated October 30, 2023, and Plaintiff's counsel confirmed that Plaintiff opposes this Motion. In support of this Motion, Defendant submits the following brief:

## INTRODUCTION

Plaintiff Savista, LLC ("Savista") is a Delaware limited liability corporation with its principal place of business in Alpharetta, Georgia. (*See*, Complaint, ¶ 1). Defendant GS Labs, LLC ("GS Labs") is a Nebraska limited liability corporation with its principal place of business in Omaha, Nebraska. (*See id.*, ¶ 2). On or about November 23, 2021, the parties entered into a Master Services Agreement (the "Agreement") whereby Savista agreed to provide healthcare debt

1

recovery services for GS Labs. (*See id.*, ¶ 5). The parties amended the Agreement via two subsequent amendments. (Affidavit of Jessica Thompson ("Thompson Aff."), Exhibit A). The Agreement and both amendments provided that the agreements would be interpreted according to Delaware law. (*Id.*).

Throughout the parties' relationship and at all relevant times, GS Labs' representatives were located in either Nebraska or Texas; to GS Labs' knowledge, Savista's representatives were located in either Georgia, North Carolina, Kentucky, or India. At no relevant time were either of the parties' representatives physically present in Illinois. Savista does not allege that it performed under the Agreement in Illinois, instead relying almost exclusively on GS Labs' operation of a Covid-19 testing site in Warrensville, Illinois, several months before the parties executed the Agreement. Under the US Supreme Court's personal jurisdiction jurisprudence, these random, isolated, and attenuated contacts cannot serve as the basis for asserting personal jurisdiction over GS Labs. The contacts were completely unrelated to the operative facts giving rise to Savista's Complaint, and they could not have led GS Labs to reasonably anticipate being haled into court in Illinois. Savista further alleges that GS Labs made several payments to Savista into a bank account in Illinois. This assertion is not supported by the evidence, which shows that all payments made by GS Labs to Savista were sent to a bank in California. Accordingly, this Court lacks personal jurisdiction over GS Labs and it should therefore be dismissed as a party without prejudice.

Alternatively, in the unlikely event the Court finds GS Labs is subject to personal jurisdiction in Illinois, GS Labs requests that, for the convenience of the parties and in the interests of justice, the case be transferred to the U.S. District Court for the District of Nebraska. Many of the witnesses who will be called to testify in this case reside in Omaha, Nebraska. None of the witnesses or either party resides in Illinois. Thus, Nebraska is a far more convenient forum than

the Northern District of Illinois. Further, this Court's docket is more congested than the District of Nebraska, so the parties are more likely to achieve an efficient resolution of the dispute in the latter forum. Accordingly, transferring the case would serve the interests of justice.

## STATEMENT OF FACTS

GS Labs is a CLIA certified clinical laboratory that was formed in January 2020; it opened its first testing site in October 2020 and conducted Covid-19 testing for individuals at 64 locations nationwide until its last testing site was closed in September 2022. (Thompson Aff., ¶ 7). GS Labs' only testing site in Illinois was located in Warrensville, Illinois, and was open from January 5, 2021, until February 9, 2021. (*Id.*, ¶ 8). GS Labs later hired Savista to perform debt recovery services for delinquent or unpaid accounts. (*Id.*, ¶ 9). The parties entered into the Agreement on or about November 23, 2021, and signed a 2nd amendment on March 31, 2023. (*Id.*, ¶ 4, Exhibit A). All GS Labs' representatives who negotiated the Agreement and amendments thereto or otherwise interacted with Savista representatives were located in either Nebraska or Texas at the time of the interactions. (*Id.*, ¶ 4; Affidavit of Greg Wilson ("Wilson Aff."), ¶ 3). No GS Labs employees or anyone else on GS Labs' behalf ever traveled to or went into Illinois with regard to any interactions or communications with Savista. (Thompson Aff., ¶ 19).

Savista was hired to perform collection services on approximately 674,000 accounts. (*Id.*, ¶ 15). Only 418 of these accounts arose out of patients tested at GS Labs' testing site in Warrensville, Illinois. (*Id.*). To recover the Illinois accounts (and all accounts it collected on for that matter), Savista would not have had any contact with the patient directly. (*Id.*, ¶ 16). Payments were being made by the patients' health insurers, so Savista would have had no reason to contact Illinois residents directly. (*Id.*). When Savista recovered payment on behalf of GS Labs, the recovered payment would be paid directly to GS Labs from the patients' health insurer into a bank

account in Omaha, Nebraska, or through a check sent directly to GS Labs' physical address, which is also in Omaha. (*Id.*, ¶ 17). Contrary to Savista's Complaint, when GS Labs made payments to Savista, the payments were sent to a bank account with a California address. (*Id.*, ¶ 18).

The Agreement and subsequent amendments were signed by GS Labs representatives in Omaha, Nebraska. (*Id.*, ¶ 13; Wilson Aff., ¶ 6). GS Labs primarily had contact with two Savista representatives in negotiating the terms of the 2nd amendment—Krista Pippen and Olivia Currin-Britt. (Thompson Aff., ¶ 10). Krista Pippen's email signature block states that her office is located in Alpharetta, Georgia, and her telephone number is a number from the Louisville, Kentucky, area. (*Id.*, ¶ 11). Olivia Currin-Britt's email signature block also says her office address is in Alpharetta, Georgia, and her telephone number is a number from the Raleigh, North Carolina, area. (*Id.*, ¶ 12). After execution of the Agreement, GS Labs had contact with several other Savista employees who, to GS Labs' understanding, were located in India at the time of the communications. (*Id.*, ¶ 14). Throughout GS Labs' relationship with Savista, GS Labs did not have any operations or other business activities in Illinois and was not soliciting business there. (*Id.*, ¶ 21). All past and present GS Labs employees with knowledge relevant to Savista's allegations against GS Labs are currently located in either Omaha, Nebraska, or Texas. (*Id.*, ¶ 20).

## STANDARD OF REVIEW

The 7th Circuit reviews a dismissal for lack of personal jurisdiction de novo. *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). "The plaintiff bears the burden of establishing personal jurisdiction when the defendant challenges it." *Id*.

## ARGUMENT

I.  **Savista's Claims Should be Dismissed Due to Lack of Personal Jurisdiction over GS Labs**

The Fourteenth Amendment's Due Process Clause limits a state's power to exercise

4

jurisdiction over a defendant. *See International Shoe Co. v. Washington*, 326 U.S. 66, 66 S. Ct. 143 (1945). "'Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.'" *John Crane, Inc. v. Shein Law Ctr. Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018) (quoting *Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 1121 (2014)). "The Illinois long-arm statute requires nothing more than the standard for federal due process: that the defendant have sufficient contacts with the forum state 'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)).

There are two ways in which a federal district court may obtain personal jurisdiction over a defendant: general jurisdiction and specific jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S. Ct. 2846 (2011). General personal jurisdiction may be exercised over a defendant when the defendant is "essentially at home" in the forum state. *Goodyear*, at 923, 131 S. Ct. at 2853. "The paradigm forums in which a corporate defendant is 'at home' are the corporation's place of incorporation and its principal place of business." *Livingston v. Hoffmann-La Roche Inc.*, 293 F. Supp. 3d 760, 766 (N.D. Ill. 2018) (quoting *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558, 198 L. Ed. 2d 36 (2017)).

    **A.**    **The Court does not have general personal jurisdiction over GS Labs.**

General or "all-purpose" jurisdiction only applies in a limited number of circumstances. *Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 760 (2014). "[A] court may assert [general] jurisdiction over a foreign corporation 'to hear any and all claims against it' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render it essentially at home in the forum state.'" *Id.* at 122, 134 S. Ct. 746, 751 (2014) (quoting *Goodyear*, at 919, 131 S. Ct. at 2851).

The Court does not have general jurisdiction over GS Labs, which was founded and organized in Nebraska, and has its principal place of business in Omaha, Nebraska. GS Labs' operations within Illinois were limited and short-lived and comprised a very small percentage of its overall operations, which were conducted nationwide. GS Labs is simply not "at home" in Illinois and it cannot be sued there on the basis of general personal jurisdiction.

**B.     The Court does not have specific personal jurisdiction over GS Labs.**

Specific jurisdiction deals with a party who has taken "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum state." *Hanson v. Denckla*, 357 U.S. 235, 78 S. Ct. 1228 (1958). The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 283-84, 134 S. Ct. at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S. Ct. 1473 (1984)). "For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related conduct must create a substantial connection with the forum State*." *Id.* at 284, 134 S. Ct. at 1122 (emphasis supplied).

"Specific jurisdiction requires not only that a defendant establish minimum contacts with the forum state, *but also that the litigation arise out of those contacts*." *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 576 (7th Cir. 2020) (emphasis supplied). In *J.S.T. Corp.*, the 7th Circuit held that, even though the corporate defendant had offices in Illinois and manufactured products that were sold there, its offices and the products it sold were completely unrelated to the plaintiff's claims. *Id.* (citing *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 ("even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales"); *see also*, *Hanchett Paper Co. v. Office Depot, LLC*, 2023 U.S. Dist. LEXIS 147169, *9 (Aug. 22, 2023) ("[the defendant's] general operations in Illinois do not apply

to the specific personal jurisdiction analysis; *only its suit-related contacts matter*") (emphasis supplied).

In the breach of contract context, courts should "conduct a context-sensitive analysis of the contract, examining 'prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other.'" *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 493 (7th Cir. 2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S. Ct. 2174 (1985)). And "it is only the 'dealings *between the parties in regard to the disputed contract*' that are relevant to minimum contacts analysis." *RAR, Inc.*, at 1278 (quoting *Verotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3rd Cir. 1996)) (emphasis in original).

In *Northern Grain*, the 7th Circuit found that a defendant did not have sufficient suit-related contacts with Illinois to subject him to personal jurisdiction in the State. The defendant was a Wisconsin farmer who met a grain buyer who worked for an Illinois corporation (the plaintiff) at a tradeshow in Illinois in early 2003. *Northern Grain*, 743 F.3d at 489. Later that year, the defendant signed a contract with the plaintiff for the sale of grain. *Id.* After their initial meeting at the tradeshow, all the parties' subsequent meetings occurred remotely or out-of-state and, for the next several years, the parties' contracts were always signed in Wisconsin. *Id.* The defendant delivered grain purchased by the plaintiff to a grain elevator in Wisconsin. *Id.* However, the checks the defendant received for payment came from an Illinois bank. *Id.* The plaintiff later alleged that the defendant breached one of the parties' contracts and filed suit in the Northern District of Illinois. *Id.* at 490. The defendant moved to dismiss for lack of personal jurisdiction. *Id.* at 491.

In finding the defendant was not subject to personal jurisdiction in Illinois, the court explained that "[t]he defendant's conduct and connection with the forum state must be substantial

7

enough to make it reasonable for the defendant to anticipate that he could be haled into court there." *Id.* at 492 (citing *Burger King*, 471 U.S. at 474). Jurisdiction cannot be based on "'random, fortuitous, or attenuated contacts,'" *Id.* at 493 (quoting *Burger King*, 471 U.S. at 475), but must instead be based on "contacts that demonstrate a real relationship with the state with respect to the transaction at issue[.]" *Id.* (citing *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). In summary, the court found that "the contracts at issue were formed remotely or in the nonforum state," and even though the defendant contracted with an Illinois corporation (the plaintiff) over the course of nine years, performance of the contract occurred out-of-state. *Id.* at 496. The attenuated nature of the payments the plaintiff received from the Illinois bank account were insufficient, standing alone, to subject the defendant to personal jurisdiction in Illinois, even though he had knowingly contracted with an Illinois company for almost a decade.

    i.  **GS Labs did not have sufficient suit-related contacts to justify the exercise of specific personal jurisdiction.**

Savista contends the Court has personal jurisdiction over GS Labs because: (1) GS Labs operated a Covid-19 testing site in Illinois in early 2021, (2) Savista attempted to recover payments from patients who were tested at the Illinois test site, and (3) GS Labs sent payments to Savista's bank account in Illinois. First, GS Labs' operation of the test site in Illinois – which was one of 64 test sites GS Labs operated nationwide – does not factor into the specific personal jurisdiction analysis because those operations are unrelated to the operative facts underlying Savista's Complaint. The Illinois test site opened and closed before the Agreement was signed, and Savista's allegations of breach pertain to nonpayment of amounts owed for debt recovery services performed for patient accounts nationwide. Critically, GS Labs' operation of the Illinois test site has no bearing on the only issue in this lawsuit, which is the dispute between the parties about the proper interpretation of the Agreement and subsequent amendments.

Second, Savista's allegation that it recovered payments from patients who were tested in Illinois does not affect the analysis because those payments would have been recovered from the patients' insurers, not the patients themselves. If Savista recovered payments from insurance companies in Illinois (i.e., the payors), why is that not stated in the Complaint? Moreover, there were 418 unpaid accounts from patients who tested in Illinois out of a total of approximately 674,000 claims that Savista was hired to recover. Savista only recovered on 82 of the Illinois claims. These isolated and indirect contacts that Savista claims it had with Illinois citizens did not amount to purposeful availment *by GS Labs* sufficient to create a "substantial enough" relationship to make it reasonable for GS Labs to anticipate being haled into court in Illinois. Even if Savista had contact with the Illinois residents directly (which they did not), those were contacts that *Savista—not GS Labs—*had with Illinois residents.

Third, GS Labs did not send payments to Savista's bank account in Illinois—all payments by GS Labs were sent to a bank account in California. But even if it did, that kind of isolated contact is insufficient to subject GS Labs to personal jurisdiction in Illinois. *See Northern Grain*, *supra* (out-of-state defendant's receipt of payment from Illinois resident's Illinois bank account insufficient to establish minimum contacts with the State). Savista is a Delaware corporation with its principal place of business in Alpharetta, Georgia. A payment to a nonresident with a bank account in Illinois does not subject the payor to personal jurisdiction in Illinois. Even if the payments to an Illinois bank did occur, this would amount to a random, attenuated contact that cannot be used to justify subjecting GS Labs to personal jurisdiction in Illinois.

    **ii.**   **Subjecting GS Labs to personal jurisdiction in Illinois would not comport with traditional notions of fair play and substantial justice.**

In the final step of the inquiry, the court must ensure that exercising personal jurisdiction "'does not offend traditional notions of fair play and substantial justice.'" *Curry v. Revolution*

9

*Labs., LLC*, 949 F.3d 385, 402 (7th Cir. 2020) (quoting *Int'l Shoe*, 326 U.S. at 316 (citation and internal quotation marks omitted)). In making this determination, the court is to consider:

> "[T]he burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared interest of the several States in furthering fundamental substantive social policies."

*Id.* (quoting *Purdue Research*, 338 F.3d at 781 (internal quotation marks omitted)).

These factors all weigh in favor of dismissing GS Labs for lack of personal jurisdiction. The dispute underlying this case involves two out-of-state parties. GS Labs' representatives were located in Nebraska or Texas when they negotiated the terms of the 2nd amendment to the Agreement; Savista's representatives were located in Kentucky and North Carolina. GS Labs signed the Agreement and amendments in Nebraska, and Savista does not allege that its counterparts were signed in Illinois. Savista does not allege that its performance of the Agreement was to take place in Illinois either. Indeed, the facts show that it was performed elsewhere.

Savista's allegations of breach do not involve harm to any Illinois residents. Even if GS Labs' payments to Savista were made to an Illinois bank account (which they were not), Illinois has no interest in resolving the dispute about whether those payments were adequate under the terms of the parties' Agreement. Neither of the parties were Illinois residents and performance of the Agreement by Savista was performed elsewhere. If this lawsuit is allowed to move forward in this Court, GS Labs would be forced to litigate the case in a forum with which it has no connections or ties. This would place an unfair burden upon GS Labs.

Throughout the parties' relationship, GS Labs' representatives believed they were working with a Delaware company with its principal place of business in Alpharetta, Georgia. The two Savista representatives who primarily communicated with GS Labs representatives prior to

execution of the 2nd amendment were located in Kentucky and North Carolina. After the Agreement was signed, GS Labs worked with other Savista employees located in India. How could GS Labs have reasonably anticipated being haled into court in Illinois if a dispute arose from the parties' relationship? To force GS Labs to submit to personal jurisdiction under these facts would not comport with traditional notions of fair play and substantial justice.

Finally, as discussed further below, caseload data collected by UScourts.gov shows that the average length of time from filing a case to trial is longer in this Court compared to the District of Nebraska, where GS Labs is domiciled. Thus, allowing the case to remain in this district would frustrate the judicial system's interest in obtaining the most efficient resolution of the parties' dispute. The case has a better chance of being resolved more rapidly if it is litigated in GS Labs' home state.

## II. In the Alternative, GS Labs Respectfully Submits that the Action Should be Transferred to the U.S. District Court for the District of Nebraska where Venue is Proper.

If the Court does not dismiss GS Labs for lack of personal jurisdiction, then in the alternative the lawsuit should be transferred to the U.S. District Court for the District of Nebraska, which has personal jurisdiction over GS Labs.

28 U.S.C. § 1391 governs the proper venue for a civil action. § 1391(b) provides:

A civil action may be brought in –

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(c)(1)-(2).

GS Labs does not reside in Illinois and a substantial part of the events or omissions giving rise to Savista's allegations did not occur in Illinois. Further, GS Labs has no suit-related contacts with the State. Thus, this Court is not a proper venue under 28 U.S.C. § 1391.

If venue where the case is pending is improper, a district court may dismiss the case or transfer it to another judicial district under 28 U.S.C. § 1406(a):

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). A federal district court may also transfer venue of a civil action "[f]or the convenience of parties and witnesses, in the interest of justice…." 28 U.S.C. § 1404(a).

### A. The convenience of the parties and witnesses weighs in favor of transfer.

In weighing "the convenience of the parties and witnesses" under § 1404(a), courts are to consider the following factors: "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the witnesses, and (5) the convenience to the parties." *IMM Holdings, Ltd. v. HK Parts, Inc.*, 2020 U.S. Dist. LEXIS 172918, *15 (N.D. Ill., Sept. 22, 2020). The first factor, "the plaintiff's choice of forum," is entitled to less consideration "when it is not connected to the material events or when another forum has a stronger relationship to the claim." *Id.* As outlined above, GS Labs' minimal contacts with Illinois bear no relationship whatsoever with the operative facts underlying Savista's Complaint – all of which occurred outside the State. Thus, the first factor weighs in favor of transfer.

The situs of material events factor also weighs in favor of transfer. All relevant events giving rise to the Complaint occurred outside of Illinois. GS Labs' representatives who participated in negotiation of the Agreement were located in Nebraska when the negotiations took place. The Agreement and amendments were signed by GS Labs representatives in Nebraska. The payments

12

Savista recovered on GS Labs' behalf were deposited into a bank account in Nebraska. To GS Labs' knowledge, none of Savista's representatives were located in Illinois when the parties negotiated the terms of the Agreement and amendments thereto. Performance of the Agreement by Savista was to take place in either Georgia, Kentucky, North Carolina, or India, where Savista's employees were located. Thus, situs of the material events was not in Illinois, and this factor weighs in favor of transfer.

Finally, the convenience of the parties and witnesses likewise weighs in favor of transfer. All individuals who may be called to testify on GS Labs' behalf reside in either Nebraska or Texas. The Savista representatives who negotiated the Agreement reside in North Carolina or Kentucky, and other Savista employees with whom GS Labs had contact live in India. None of the individuals who may testify as witnesses in this case reside in Illinois, and neither party is domiciled there. Thus, the Northern District of Illinois is not a convenient forum for the parties and witnesses.

### B. The interests of justice weigh in favor of transfer.

"The interest of justice factors may be determinative, even where the convenience factors point in the opposite direction." *IMM Holdings, Ltd.*, 2020 U.S. Dist. LEXIS at *14. In weighing the interests of justice, courts are to consider the following factors: "(1) the speed at which the case will proceed to trial, (2) the court's familiarity with applicable law, (3) the desirability of resolving controversies in each locale, and (4) the relation of each community to the occurrence at issue." *Id.* at *19. In weighing the first factor, the *IMM Holdings* Court examined civil caseload data from the transferor court and the transferee court and determined that transfer was proper primarily due to the fact that the transferee court had a lighter caseload than the transferor court and the case would therefore proceed to trial more quickly. *Id.* at *20 (citing United States District Court—National Judicial Caseload Profile Statistics 2020). The court reasoned:

> This data reveals that the median length of time between filing to trial for civil cases was thirty-four months for the Northern District of Illinois and about forty-four months for the District of Utah. [Citation omitted]. This weighs slightly [against transfer]. However, less congested court dockets and earlier trial prospects in the potential transferee court favor transfer. … According to the data, as of March 31, 2020, the District Court of Utah had 227 civil cases, 13.5% of which were over three years old. National Judicial Caseload Statistics, *supra*. The Northern District of Illinois, however, had 4,528 civil cases pending as of March 31, 2020, with 34% over three years old. This drastic difference in docket congestion of the two fora weighs in favor of transfer.

*Id.*

Applying this reasoning here, for the 12-month period ending on June 30, 2023, the District of Nebraska had 86 civil cases pending on its docket for more than 3 years. (*See*, United States District Court—Caseload Statistics Data Tables, US District Courts – Federal Court Management Statistics—Comparison Within Circuit, https://www.uscourts.gov/file/73215/download). This number comprised just *5.4%* of the total civil cases pending in the District of Nebraska. (*See id.*). By contrast, for the same 12-month period, the Northern District of Illinois had 2,406 civil cases pending on its docket for more than 3 years. *Id.* This number comprised *23.4%* of the total civil cases pending before this Court. This substantial difference in the number of cases pending in the two competing forums weighs heavily in favor of transfer.

Moreover, the median time that civil cases moved from filing to trial in the Northern District of Illinois for the same time-period was 58.2 months. In the District of Nebraska, the most recent data (from September 2022) shows that its median time from filing to trial for civil cases was just 29.4 months. (*See*, U.S. District Court—Judicial Caseload Profile, District of Nebraska, https://www.ned.uscourts.gov/internetDocs/judicialCaseloadProfiles/fcmsSep22.pdf). This shows that the likelihood of achieving an expeditious resolution of the parties' dispute is increased if the case is transferred to the District of Nebraska.

14

The choice of law provision in the Agreement states that disputes between the parties will be resolved according to Delaware law. Regardless of whether this case is litigated in Illinois or Nebraska, the court will be applying a law other than its home state. Thus, this factor does not weigh in favor of or against transfer. Since the parties are domiciled elsewhere and performance of the Agreement occurred entirely out-of-state, this Court has no interest in resolving the dispute underlying this lawsuit. On the other hand, the District of Nebraska has an interest in resolving the dispute because it involves a Nebraska resident and the Agreement was executed in Omaha, Nebraska. Thus, the remaining factors weigh in favor of transfer.

## CONCLUSION

For the foregoing reasons, GS Labs respectfully requests that Savista's Complaint be dismissed without prejudice or, alternatively, that this lawsuit be transferred to the United States District Court for the District of Nebraska.

DATED this 30th day of October, 2023.

GS Labs, LLC, Defendant,

By: *Paul M. Shotkoski*
Paul M. Shotkoski, #6230268
FRASER STRYKER PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102
(402) 341-6000
pshotkoski@fraserstryker.com

and

*/s/ Ebadullah Khan*
Ebadullah Khan, *Pro Hac Vice*
City Ventures, LLC
222 So. 15th Street, Suite #1404S
Omaha, Nebraska 68102
(832) 202.6028
ekhan@city-ventures.com

15