UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAVISTA, LLC, | ) |
| Plaintiff, | ) )  |
| v. | ) No. 23 C 6445 ) |
| GS LABS, LLC, | ) Judge Sara L. Ellis ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Plaintiff Savista LLC sued Defendant GS Labs, Inc for breach of contract, claiming that GS Labs failed to compensate Savista for the financial services it performed under the contract. GS Labs moves to dismiss Savista's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to transfer venue to the District of Nebraska. The Court denies GS Labs' motion to dismiss because personal jurisdiction exists in Illinois, but it grants GS Labs' motion to transfer venue to the District of Nebraska.

## BACKGROUND[1]

Savista is a healthcare revenue cycle services company incorporated in Delaware with its principal place of business in Georgia. GS Labs is a healthcare testing facility that provided Covid-19 testing to patients at 64 locations nationwide. GS Labs is incorporated and has its principal place of business in Nebraska. GS Labs operated only one testing location in Illinois, which was in Warrensville. The Warrensville lab opened on January 5, 2021 and closed on February 9, 2021. Both Savista and GS Labs are currently registered to do business in Illinois.

---

[1] In addressing personal jurisdiction, the Court is not limited to the pleadings. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The Court, therefore, draws the facts from the complaint and the additional documents submitted by the parties. The Court resolves all factual conflicts and draws all reasonable inferences in Savista's favor. *Id.* at 782–83.

Between October 2020 and September 2022, GS Labs provided Covid-19 testing to over 2,000,000 patients. GS Labs hired Savista to help recover funds from about 674,000 unpaid accounts arising from its Covid-19 testing, including 418 accounts tied to patients at the Warrensville lab. On November 23, 2021, GS Labs and Savista entered into a Master Services Agreement (the "Contract"). GS Labs negotiated and signed the Contract from its offices in Nebraska. Under the Contract, Savista performed billing and accounts receivable services for GS Labs, including for GS Labs' activities in Illinois. In doing so, Savista negotiated directly with payors in Illinois, including Blue Cross Blue Shield of Illinois ("BCBS Illinois"), on GS Labs' behalf.

On March 31, 2023, Savista and GS Labs signed a Second Amendment to the Contract, which required Savista to perform accounts receivable services for the collection of money due on accounts. GS Labs negotiated the Second Amendment from its offices in Nebraska with Savista employees located in Kentucky and North Carolina. Between April and June 2023, Savista collected $3,892,385 from BCBS Illinois for 9,569 delinquent or unpaid patient accounts. Recovered funds either funneled directly into GS Labs' bank account in Nebraska or were sent to GS Labs' physical address in Nebraska. GS Labs sent payments to Savista's bank account in California. GS Labs has not paid four invoices that Savista issued between May and August 2023.

## ANALYSIS

I. **Personal Jurisdiction**

GS Labs moves to dismiss Savista's claim for lack of personal jurisdiction under Rule 12(b)(2). When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385,

392 (7th Cir. 2020) (citation omitted). If the Court rules on the Rule 12(b)(2) motion without an evidentiary hearing, as it does here, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id*. at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint liberally with every inference drawn in favor of [the] plaintiff," *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). However, if the defendant submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiff must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1, but resolves "any factual disputes in the [parties'] affidavits in favor of the plaintiff," *Felland*, 682 F.3d at 672.

A federal court sitting in diversity may exercise personal jurisdiction to the extent authorized by the constitution and the law of the state in which it sits. *Nucor v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 580 (7th Cir. 1994); Fed. R. Civ. P. 4(e) (federal court sitting in diversity can exercise personal jurisdiction only as allowed by the law of the state in which it sits). The Illinois long-arm statute authorizes courts to exercise personal jurisdiction on any basis permitted by the Illinois and United States constitutions. *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (citing 735 Ill. Comp. Stat. 5/2-209(c)). This standard effectively merges the federal constitutional and state statutory inquiries. *N. Grain Mktg*, 743 F.3d at 492. Accordingly, a single inquiry into whether the United States Constitution permits jurisdiction suffices. *See, e.g.*, *Curry*, 949 F.3d at 393; *Illinois v. Hemi Grp. LLC*, 622 F.3d 754,

3

756–57 (7th Cir. 2010); *see also Wesly v. Nat'l Hemophilia Found.*, 2020 IL App (3d) 170569, ¶ 16 ("[I]t is generally true that, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns." (alteration in original) (citation omitted)).

The Due Process Clause of the United States Constitution permits a court to exercise jurisdiction when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). And importantly, "the question of personal jurisdiction hinges on the defendant's—not the plaintiff's—contacts with the forum state." *North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023); *see also Purdue Rsch.*, 338 F.3d at 780 ("Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity").

Personal jurisdiction may be either general or specific.[2] *See Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019). GS Labs argues this Court does not have general or specific personal jurisdiction over it. Savista

---

[2] The Supreme Court has recently emphasized that a third method of establishing personal jurisdiction exists where a defendant has consented to suit in the forum. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023). Because Savista does not argue that GS Labs consented to suit in Illinois, the Court need not address the implications of *Mallory* further.

only contends that the Court has specific jurisdiction over GS Labs, so the Court limits its analysis accordingly.[3]

Specific jurisdiction is "case-linked." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "[T]he suit must arise out of or relate to the defendant's contacts with the forum," meaning "there must be 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id*. (quoting *Goodyear*, 564 U.S. at 919). Here, to establish minimum contacts that create specific personal jurisdiction, GS Labs must have purposefully directed its activities at Illinois or purposefully availed itself of the privilege of conducting business in Illinois, and Savista's alleged injury must arise out of or relate to GS Labs' forum-related activities. *See Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021). Even if GS Labs' conduct satisfies that test, the Court still may only exercise jurisdiction if the contacts establishing that jurisdiction are "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id*. (quoting *Int'l Shoe Co.*, 326 U.S. at 316). A defendant is not subject to jurisdiction solely because the plaintiff suffered injury in the forum state. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014).

---

[3] If Savista argued that the Court had general jurisdiction over GS Labs, the Court would have rejected that argument because GS Labs does not have "continuous and systemic general business contacts with the forum state." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010) (citation omitted) (internal quotation marks omitted). Further, the two places that courts have identified as where a corporate defendant "is essentially at home"—namely "the state of the corporation's principal place of business and the state of its incorporation," *see Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015)—are in Nebraska, not in Illinois.

In a breach of contract case such as this one, "it is only the 'dealings between the parties in regard to the disputed contract' that are relevant to minimum contacts analysis." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) (quoting *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1996)). Those dealings include "(1) whether the contract was negotiated or executed in Illinois and whether it was to be performed in Illinois; (2) whether payment was to be made in Illinois; (3) whether the defendant was ever physically present in Illinois in connection with the contract; (4) whether the Illinois plaintiff or the out of state defendant initiated the transaction; (5) and the occurrence of telephone calls or other communications to and from Illinois." *AS Engine Leasing, LLC v. Vision Airlines, Inc.,* No. 14 C 1436, 2014 WL 6461760, at *3 (N.D. Ill. Nov. 18, 2014).

Here, GS Labs' contacts with Illinois meet the minimum contacts requirement. By operating a Covid-19 testing lab in Warrensville, Illinois where it provided tests to Illinois residents, GS Labs purposefully availed itself of doing business in Illinois. *See Hemi Grp.*, 622 F.3d at 758 (finding that a company had sufficient minimum contacts with Illinois when it "knowingly did do business with Illinois residents"). Further, these contacts are relevant to Savista's harm. GS Labs hired Savista to recover fees from unpaid accounts including from over 9,000 Illinois residents,[4] some of whom received testing from the Warrensville lab. And those accounts fall within the accounts for which Savista asserts GS Labs failed to pay. *See Bentel & Co. v. Schraubenwerk Zerbst GmbH*, No. 16 C 11479, 2017 WL 3278324, at *6 (N.D. Ill. Aug. 2, 2017) (finding personal jurisdiction over the defendant where the plaintiff's services in Illinois for the defendant "lie[ ] in the wake of [the defendant's] commercial activities in Illinois"); *see*

---

[4] While GS Labs contests the number of Illinois accounts that required Savista's services, the Court must resolve all factual disputes in Savista's favor at this stage of the litigation. *See Purdue Rsch.*, 338 F.3d at, 783 ("[U]nder the *prima facie* standard, the plaintiff is entitled to have any conflicts in the affidavits (or supporting materials) resolved in its favor.").

*also Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1215–16 (7th Cir. 1984) (finding specific personal jurisdiction where "the discussions that took place in Illinois between [a manufacturer's representative] and [the defendant's sole shareholder] played a part in the subsequent [out-of-state] negotiations between [the latter] and the plaintiff, which led to the contract between [the manufacturer] and the plaintiff"). While GS Labs challenges the relevance of these contacts given the short time that the Warrensville lab operated, GS Labs does not dispute that Savista collected at least some debt for individuals who received Covid-19 testing at the Warrensville lab. *See* Doc. 17 ¶ 14. The Court therefore finds that GS Labs has sufficient contacts with Illinois to warrant exercising jurisdiction over it given that Savista's alleged harm arises from work GS Labs contracted Savista to do that "lie[s] in the wake" of GS Lab's commercial activities in Illinois. *Bentel*, 2017 WL 3278324, at *6.

Having found the required minimum contacts, the Court must also evaluate whether maintaining personal jurisdiction over GS Labs offends the traditional notions of justice and fair play. In doing so, the Court considers the burden on GS Labs, Illinois' interest in adjudicating the dispute, Savista's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most effective resolution, and the shared interest of the several States in further fundamental substantive social policies. *See Curry*, 949 F.3d at 402. When a plaintiff "has made a threshold showing of minimum contacts" as Savista has done here, "that showing is generally defeated only where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King v. Rudezwicz*, 471 U.S. 462, 477 (1985)). GS Labs has not met this burden. While GS Labs operates outside of Illinois, "inconvenience is not a dispositive factor because modern technology and transportation allow it to litigate with relative ease anywhere in the United

States." *Lab Verdict, Inc. v. Lab Equip Ltd.*, 436 F. Supp. 3d 1181, 1189–90 (S.D. Ind. 2020). Nor is there any indication "that the exercise of personal jurisdiction here would undermine any substantive social policies." *Id.* Accordingly, the Court finds that it has personal jurisdiction over GS Labs.

**II.     Transfer**

Because the Court finds that it has personal jurisdiction over GS Labs, it turns to GS Labs' motion to transfer to the U.S. District Court for the District of Nebraska. Courts may transfer venue to any other district or division where an action may have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). For the Court to transfer the case under § 1404(a), GS Labs must demonstrate that "(1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and the witnesses; and (4) transfer would serve the interest of justice." *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007). If venue is not proper in this district, the Court may still transfer the case to another district where the case could have been brought, "if it be in the interest of justice." 28 U.S.C. § 1406(a). The Court has discretion over the transfer decision because the "weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

GS Labs first argues that venue is improper in the Northern District of Illinois. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which in the district is located." 28 U.S.C. § 1391(b)(1). A "defendant entity with the capacity to sue and be sued, in its common name under the applicable law, whether or not incorporated, is deemed to reside in any judicial district where there is personal jurisdiction."

8

*Wilson v. CooperSurgical, Inc.*, No. 3:22-CV-1651, 2023 WL 6216933, at *16 (S.D. Ill. Sept. 25, 2023) (citing 28 U.S.C. § 1391(c)(2)). Venue is also proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). A substantial part does not mean "most," nor does it require the district court to be the best venue. *See Ford-Reyes v. Progressive Funeral Home*, 418 F. Supp. 3d 286, 290 (N.D. Ill. 2019). "For events to be considered substantial under the statute, it is sufficient for the plaintiff to establish that the events occurring in the forum district were part of the historical predicate for the instant suit." *Jackson v. N'Genuity Enters., Co.*, No. 14 C 2197, 2014 WL 4269448, at *6 (N.D. Ill. Aug. 28, 2014) (citation omitted). Because the Court has personal jurisdiction over GS Labs and because events underlying the lawsuit occurred in this district, the Court finds that venue is proper here. *See* 28 U.S.C. §§ 1391(b)(1)–2, 1391(c)(2). As such, the Court considers GS Labs' motion to transfer under § 1404(a). Because Savista does not contest the propriety of venue in the District of Nebraska, the Court turns to whether transfer would serve the convenience of the parties and the witnesses as well as the interest of justice.

      A.      **Convenience of the Parties and Witnesses**

In analyzing the convenience of the parties and witnesses, the Court considers (1) Savista's choice of forum, (2) the situs of the material events, (3) the relative ease of access to proof, (4) the convenience of the witnesses, and (5) the convenience of the parties in litigating in the respective forums. *Sojka v. DirectBuy, Inc.*, No. 12 C 9809, 2014 WL 1089072, at *2 (N.D. Ill. Mar. 18, 2014). GS Labs bears the burden of demonstrating that transfer is "clearly more convenient." *Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (quoting *Coffey*, 796 F.2d at 219–20). "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer."

9

*Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). In this case, the convenience of the parties and witnesses favors transfer.

    ***1. Plaintiff's Choice of Forum.*** While courts typically give a plaintiff's choice of forum substantial deference, the deference diminishes "where the plaintiff's chosen forum is not the plaintiff's home forum or has relatively weak connections with the operative facts giving rise to the litigation." *Body Sci. LLC. v. Boston Sci. Corp.*, 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012). Illinois is not Savista's home forum—Savista is incorporated in Delaware and has its principal place of business in Georgia. Additionally, as discussed below, while some underlying events occurred in Illinois, the situs of material facts occurred in Nebraska. Accordingly, the Court gives little deference to Savista's choice of forum.

    ***2. Situs of Material Events.*** The situs of material events in a breach of contract claim is "where the business decisions causing the breach occurred." *Hyatt Corp. v. Pers. Commc'ns Indus. Ass'n*, No. 04 C 4656, 2004 WL 2931288, at *3 (N.D. Ill. Dec.15, 2004). Here, the parties agree that their dispute centers on interpretation of the Contract, so the Court also considers "where the agreement was primarily negotiated and signed." *Valbruna Stainless, Inc. v. ADT Sec. Servs., Inc.*, No. 1:10-CV-00077, 2010 WL 2772324, at *3 (N.D. Ind. July 12, 2010); *see also Robinson Steel Co. v. Caterpillar Inc.*, No. 2:10 CV 438, 2011 WL 923415, at *9 (N.D. Ind. Mar. 14, 2011) ("In this case, it appears to be the contract's negotiation that is in question, not its administration. Accordingly, the location of any face-to-face negotiations is important to consider."). All material events relating to the Contract's formation occurred outside of Illinois, and a significant portion of them occurred in Nebraska. GS Labs' employees who participated in the negotiation and signing of the Contract and the Second Amendment did so from their offices in Nebraska. And GS Labs represents that the involved Savista employees

10

resided in North Carolina and Kentucky, a fact Savista did not dispute. Additionally, given that the alleged breach arose from GS Labs' decision not to pay under the Contract, where GS Labs made that decision proves particularly important. *See Corvenga v. Spectra Med.*, No. 12 C 4846, 2012 WL 5342364, at *2 (N.D. Ill. Oct. 29, 2012) (finding the situs of material events occurred in the defendant's principal place of business, where the decision to anticipatorily breach the contract occurred and where the contract was negotiated and signed). That decision likely occurred where GS Labs has its principal place of business—Nebraska.

Savista's argument that Illinois has a substantial connection to this litigation relies on the fact that GS Labs hired it to recover funds for 9,000 Illinois accounts. But, as GS Labs asserts, most of the unpaid accounts for which Savista recovered payments arose from testing outside of Illinois, including 14,660 accounts in Nebraska. *See Villalobos v. Castaneda*, No. 12 C 8218, 2013 WL 5433795, at *8 (N.D. Ill. Sept. 27, 2013) (granting transfer where "the events occurring in Illinois are minimal compared to the distribution efforts that UMG and Castañeda undertake in California."). While the Illinois accounts provide the connection needed to exercise personal jurisdiction, this factor considers where the situs of material events occurred. *See Habitat Wallpaper & Blinds, Inc. v. K.T. Scott Ltd. P'ship*, 807 F. Supp. 470, 475 (N.D. Ill. 1992) (transferring venue to the District of Massachusetts because "virtually all the acts which would constitute the alleged infringement of Habitat's property took place in Massachusetts" despite denying a Rule 12(b)(2) motion to dismiss because the plaintiff suffered an injury in Illinois). And, as the Court previously noted, in a contract interpretation dispute, the situs of material events occurs where "the situs is where the business decisions causing the breach occurred . . . (considering where the agreement was primarily negotiated and signed in determining the situs of material events)." *Omnisource Corp. v. Sims Bros.*, No. 1:08-CV-89,

2008 WL 2756345, at *4 (N.D. Ind. July 14, 2008). Here, that location was Nebraska. Accordingly, the Court finds this factor favors transfer to the District of Nebraska.

   ***3. Relative Ease of Access to Proof.*** This factor is neutral. Neither party has indicated that they would require any physical evidence at trial, and any documentary evidence should be easily accessible from either location. *See Brunswick Corp. v. Fitness 19 OH 237, LLC*, No. 19 C 1503, 2019 WL 2326000, at *3 (N.D. Ill. May 31, 2019) ("[T]he physical location of documents is less important than it once was given the advent of electronic discovery.").

   ***4. Convenience of the Witnesses.*** The Court finds that the convenience of the witnesses slightly favors transfer. The convenience of the witnesses is "often viewed as the most important factor in the transfer balance." *Brandon Apparel Grp., Inc. v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999) (quoting *Rose v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989). The Court generally gives less weight to the convenience of party witnesses, whom the Court presumes would appear voluntarily at trial in either district. *See AL & PO Corp. v. Am. Healthcare Cap., Inc.*, No. 14 C 1905, 2015 WL 738694, at *4 (N.D. Ill. Feb 19, 2015) ("[T]he convenience of witnesses who are within a party's control, such as a party's employees, is far less important than the convenience of non-party witnesses."). However, where neither party has identified any party or non-party witness who reside in Illinois, as is the case here, the Court may consider the convenience of party witnesses. *See Kapoor v. Nat'l Rifle Ass'n of Am.*, 343 F. Supp. 3d 745, 752 (N.D. Ill. 2018) (considering the convenience of party witnesses as a relevant factor in transferring the case to Virginia where "the convenience of non-party witnesses is a non-factor because they are all located outside of Illinois and Virginia"). At least some of the relevant party witnesses reside primarily in Nebraska. As such, this factor slightly favors transfer.

***5. Convenience of the Litigating Parties.*** This factor is neutral. Convenience of the parties considers the parties' residences and their ability to bear the expense of litigating in each forum. *Brandon Apparel*, 42 F. Supp. 2d at 834. Because neither party resides in Illinois, and neither party raised concerns with their ability to bear the expense of litigation in either forum, this factor does not influence the analysis. *See Bryant v. ITT Corp.*, 48 F. Supp. 2d 829, 834 (N.D. Ill. 1999) (finding this factor neutral because none of the parties were Illinois citizens, the plaintiff did not object to the inconvenience of litigation in Illinois, and the defendants would be inconvenienced in either forum).

In sum, the convenience factors favor transfer to the District of Nebraska.

**B.     Interest of Justice**

The Court now turns to the interest of justice factors, which also favor transfer. When considering the interest of justice component of § 1404(a), courts consider factors such as the likelihood of a speedy trial, each court's familiarity with the applicable law, the desirability of resolving controversies in each locale, and the relationship of each community to the controversy. *Rsch. Automation*, 626 F.3d at 978.

***1. Likelihood of a Speedy Trial.*** This factor favors transfer. "Of the numerous court management statistics available, two statistics—the median number of months from filing to disposition of civil cases, and the median number of months from issue to trial in civil cases—bear the most relevance to this analysis." *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1169 (N.D. Ill. 1995). This District has over 500 more pending cases per judgeship than the District of Nebraska.[5] As of September 2022, the median time from filing to civil trial in this District was

---

[5] GS Labs cited information from the US Courts website dated June 30, 2023. Unless otherwise indicated, this Court has considered updated information from December 31, 2023. *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.2023.pdf.

nearly double that of the District of Nebraska at 48.5 months and 29.4 months respectively.[6] And the median time from filing to civil trial has only increased in this District to 56.9 months. While this District averages one month less time from filing to disposition in civil cases than the District of Nebraska, the vast discrepancy between the pending cases in this District and the District of Nebraska and the time to trial makes this factor favor transfer. *Esposito v. Airbnb Action, LLC*, 538 F. Supp. 3d 844, 849 (N.D. Ill. 2020) (transferring the claim in part due to the large disparity in the median time from filing to trial).[7]

*2. Each Court's Familiarity with Applicable Law.* The parties do not dispute that Delaware law, and not Illinois law or Nebraska law, governs Savista's breach of contract claim. Because "federal judges routinely apply the law of a State other than the State in which they sit," this factor is neutral. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 67 (2013); *see Chem. Waste Mgmt., Inc. v. Sims*, 870 F. Supp. 870, 878 (N.D. Ill. 1994) ("Because Illinois courts are no more conversant with Delaware law than Tennessee courts, this consideration neither militates for nor against transfer.")

*3. Desirability of Resolving Controversies in Each Locale and the Relationship of Each Community to the Controversy.* The Court considers the final two factors together and finds that they favor transfer. This District does not have a particular interest in resolving this dispute as neither party resides in Illinois nor does it appear that any key decisions were made in Illinois.

---

[6] The U.S. District Courts Combined Civil and Criminal Federal Court Management Statistics have not reported the average time from filing to civil trial for the District of Nebraska since September 30, 2022. *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0930.2022.pdf.

[7] Savista challenges the U.S. Courts data by noting Westlaw statistics reflect that the median time for this District to decide motions is faster than that of the District of Nebraska. Savista argues that because most contract claims do not go to trial, these statistics better represent the current workload facing this District and the District of Nebraska. However, the Court does not find the Westlaw statistics that Savista cites to be reliable because they appear to rely on data from multiple judges who have since died, retired, or now serve on the Seventh Circuit.

*Cf. Knightsbridge Mgmt., Inc. T/A Knightsbridge Rest. Grp. v. Zurich Am. Ins. Co.*, 518 F. Supp. 3d 1248, 1257 (S.D. Ill. 2021) (finding the District of Columbia had a stronger interest in resolving the controversies in part because the "key decision makers for the Defendant are also either in or very close to the District of Columbia"). However, Nebraska does have some interest given that GS Labs is incorporated and has its principal place of business there. *See Simonoff v. Kaplan, Inc.*, No. 09 C 5017, 2010 WL 1195855, at *3 (N.D. Ill. Mar. 17, 2010) (favoring transfer because a state has "an interest in ensuring that corporations that call it home are justly tried"). As such, the Court finds these factors slightly favor transfer.

While "no one element clearly indicate[s] that one forum would be more convenient than the other," because the totality of the factors points to Nebraska's "stronger nexus to the relevant events," the Court finds it appropriate to transfer this case to the District of Nebraska. *Rsch. Automation*, 626 F.3d at 979.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part GS Labs' motion to dismiss or, in the alternative, motion to transfer venue [15]. The Court transfers this case to the U.S. District Court for the District of Nebraska pursuant to 28 U.S.C. § 1404(a).

Dated: March 11, 2024

                                                                                          _____
                                                                                          SARA L. ELLIS
                                                                                          United States District Judge